UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID ROBINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-1024-EWD** |
| **CITY OF BATON ROUGE/** | |
| **THE PARISH OF EAST BATON ROUGE** | **CONSENT CASE** |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment ("Motion"), filed by defendants, City of Baton Rouge/Parish of East Baton Rouge ("City/Parish"), on April 4, 2016. (R. Doc. 48). Plaintiff, David Robinson, filed a Memorandum in Opposition ("Opposition") to the Motion. (R. Doc. 49). In the Motion, the City/Parish seeks dismissal of all of Plaintiff's claims, which include claims brought under 42 U.S.C. § 1983 and various state law tort claims. For the following reasons, the Motion is **GRANTED**.[1]

**I.    BACKGROUND**

At approximately 4:48 a.m. on December 4, 2008, Baton Rouge police officers Jake Chustz, Scotty Canezaro, and Douglas Chutz were dispatched to Splash Nightclub in Baton Rouge, Louisiana, in response to a burglar alarm. (R. Doc. 48-1 at 1). Unbeknownst to the officers, the owners of Splash had given Plaintiff, one their employees, permission to stay at the club overnight on December 3, 2008. Plaintiff had recently been the victim of several crimes and was granted permission to stay at Splash until an alarm could be installed at his apartment. (R. Doc. 1 at 2).

---

[1] In light of the Court's ruling on the Motion for Summary Judgment, the Court does not consider the Plaintiff's Motions [sic] in Limine, filed on March 4, 2016. (R. Doc. 38).

Plaintiff asserts that in the early morning hours of December 4, 2008, an unidentified person or persons attempted to break into Splash, setting off the external alarm in the process. (R. Doc. 1 at 2). Plaintiff claims he was asleep at the time and did not hear the alarm. The Baton Rouge City Police Department responded to the alarm and Officers Chutz, Canezaro, and Chustz entered the premises of Splash to investigate. During the course of their investigation, the officers found Plaintiff asleep on a couch on the second floor of the building. Plaintiff asserts that the officers confronted him and discharged their weapons in his direction. (R. Doc. 1 at 2). Plaintiff claims that he suffered multiple gunshot wounds as a result of the officers' use of excessive force under color of law. (R. Doc. 1 at 1).

The City/Parish has a different account of what happened. According to the City/Parish, when the officers arrived at Splash, they observed that the exterior door on the east side of the building had been damaged. (R. Doc. 48-1 at 1). The deadbolt lock was damaged and the door was pried open, so the officers proceeded to make entry into the building to investigate the burglar alarm. The City/Parish contends that when the officers did not find an assailant in the downstairs area of the club, they proceeded upstairs. Once upstairs, the officers allegedly saw a man lying on a sofa, at which point the officers identified themselves and asked the man to show his hands. (R. Doc. 48-1 at 1). The City/Parish claims that the subject moved and brandished what appeared to be a weapon. The City/Parish asserts that the officers identified themselves a second time and advised the subject to show his hands and drop the weapon. (R. Doc. 48-1 at 2). The City/Parish claims the subject again refused and began to fire at the officers.

The City/Parish asserts that the officers took evasive action and Officers Chustz and Chutz began to fire back at Plaintiff in self-defense. (R. Doc. 48-1 at 2). Officers Chustz and Chutz then ran downstairs to take cover and realized that Officer Canezaro was still taking cover upstairs.

Before Officers Chustz and Chutz could return upstairs to assist Officer Canezaro, the subject appeared downstairs and advised that he had been shot. The subject then submitted himself to police custody and was transported to the hospital to treat his injuries. The City/Parish asserts that Detective Ross Williams and Brian Watson[2] were called to the scene to investigate the shooting. Detectives Guilbeau and Johnson[3] went to Baton Rouge General Hospital to interview the subject, who was identified as David Robinson.

On December 4, 2009, Plaintiff filed a Complaint in this Court seeking damages from the City/Parish as a result of the injuries allegedly suffered during the December 4, 2008 incident. (R. Doc. 1 at 1). Although the police officers were not named as defendants in this litigation, Plaintiff asserts the actions of the three police officers interfered with his rights guaranteed by the United States and Louisiana Constitutions. (R. Doc. 1 at 3). Plaintiff claims that at all times pertinent hereto the officers were acting under color of state law or lawful authority for the City/Parish within the meaning and intent of 42 U.S.C. § 1983. (R. Doc. 1 at 3). Plaintiff seeks punitive damages because the officers allegedly acted in knowing, wanton, and reckless disregard for his clearly established rights. Plaintiff also asserts that the actions of the officers were extreme and caused him severe emotional distress, constituting the tort of intentional infliction of emotional distress under Louisiana Civil Code article 2315, *et seq.* (R. Doc. 1 at 3-4). Plaintiff further claims that the actions of the police officers constituted the torts of abuse of rights, invasion of privacy, assault, and battery, or alternatively, constituted the negligent discharge of their duties as law enforcement officers under La. Civ. Code art. 2315, *et seq.*, and that the City/Parish is vicariously liable for their negligence. (R. Doc. 1 at 4). Plaintiff seeks damages, attorney fees, and costs.

---

[2] The City/Parish does not specify whether Brian Watson is a detective. (*See* R. Doc. 48-1 at 2).
[3] The City/Parish does not provide a first name for these detectives. (*See* R. Doc. 48-1 at 2).

On November 22, 2010, this Court issued an Order administratively closing the action, without prejudice to the right of the parties to reopen the proceedings upon completion of the related criminal proceedings. (R. Doc. 17).[4]

On March 5, 2015, Plaintiff filed a Motion to Re-Open this matter, asserting that a plea was entered on March 26, 2013 and that "on August 22, 2013, Article 894 was granted." (R. Doc. 18).[5] On March 18, 2015, this Court issued an Order reopening the case. (R. Doc. 20).

On January 22, 2016, the City/Parish filed a Motion for Summary Judgment, asserting that Plaintiff is barred from relief because he resisted a lawful arrest and because the police officers' use of force was justified since a Grand Jury determined there was probable cause for his arrest. (R. Doc. 30) (citing *Heck v. Humphrey*, 512 U.S. 477, 488, 114 S.Ct. 2364, 2372, 129 L.Ed. 2d 383 (1994) (when a person asserts a § 1983 claim against the arresting officers, the district court must first "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.")). Plaintiff opposed the Motion, arguing that there are genuine issues of material fact regarding the events that took place before the police officers opened fire on December 4, 2008. (R. Doc. 35).

The Court held a status conference on March 24, 2016, to discuss the fact that a different legal standard applies to the Motion for Summary Judgment since only the municipality was sued

---

[4] According to the City/Parish, an arrest warrant was obtained shortly after the incident and Plaintiff was charged with three counts of attempted first degree murder of a police officer and one count of illegal use of a dangerous weapon. (R. Doc. 48-1 at 3; *See* R. Doc. 48-3). On March 5, 2009, a Grand Jury returned a True Bill charging Plaintiff with illegal use of a weapon under La. R.S. 14:94 and perjury under La. R.S. 14:123. (R. Doc. 48-1 at 3). On April 2, 2009, Plaintiff appeared in open court and entered a not guilty plea. (R. Doc. 48-1 at 3). The matter was continued for several years and reassigned on defense motion. On March 26, 2013, Plaintiff again appeared in open court and the District Attorney's Office amended the indictment to criminal mischief under La. R.S. 14:59. (R. Doc. 48-1 at 3). Although the City/Parish asserts that Plaintiff entered a guilty plea to the amended violation, the transcript from the sentencing hearing, submitted by the City/Parish, shows that on March 26, 2013, Plaintiff pleaded no contest to the amended charge of criminal mischief. (R. Doc. 48-5 at 3). Plaintiff was placed on probation and given 60 days to pay the fines imposed by the court. (R. Doc. 48-5 at 5).
[5] According to the plea transcript from March 26, 2013, the court deferred adjudication under Louisiana Code of Criminal Procedure article 894, retroactive for a period of one year, and placed Plaintiff on bench probation with conditions. (R. Doc. 30-5 at 5).

4

(rather than the officers). (R. Doc. 46). The Motion for Summary Judgment (R. Doc. 30) was therefore terminated without prejudice to the City/Parish reurging the motion under the legal standard applicable to municipalities. The City/Parish was ordered to file a revised motion no later than April 4, 2016, and Plaintiff was ordered to file an opposition to the motion no later than May 2, 2016. (R. Doc. 46).

On April 4, 2016, the City/Parish filed the instant Motion. (R. Doc. 48). The City/Parish asserts that Plaintiff's municipal liability claim under 42 U.S.C. § 1983 should be dismissed because municipalities cannot be held liable under § 1983 based on a theory of *respondeat superior*. The City/Parish asserts that to prevail on a municipal liability claim under § 1983, the plaintiff must establish: (1) an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge; and (3) a constitutional violation whose "moving force" is that policy or custom. (R. Doc. 48-1 at 4-5) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). The City/Parish argues that Plaintiff's § 1983 claim must be dismissed because Plaintiff failed to allege, much less demonstrate, an official policy or custom of the City/Parish that caused the deprivation of a constitutional right and failed to identify a policymaker who can be charged with actual or constructive knowledge of such policy. (R. Doc. 48-1 at 6). Even if Plaintiff could establish the first two elements, the City/Parish asserts that Plaintiff cannot show that the alleged policy violated federal law or authorized or directed the deprivation of federal rights, or that the alleged policy was adopted or maintained by the City/Parish's policymakers with deliberate indifference to its known or obvious consequences. (R. Doc. 48-1 at 6).

The City/Parish similarly argues that Plaintiff failed to allege any facts or produce any evidence to support his state law tort claims for which he seeks to hold the City/Parish vicariously liable. (R. Doc. 48-1 at 7-12). The City/Parish asserts that Plaintiff's claim for intentional

infliction of emotional distress should be dismissed because Plaintiff cannot show the actions of the officers were extreme or outrageous.  The City/Parish asserts that the abuse of rights claim should be dismissed because Plaintiff failed to specify what right was allegedly abused by the officers and failed to allege any facts suggesting that the officers exercised any legal right for an improper purpose.  The City/Parish further argues that Plaintiff's invasion of privacy claim should be dismissed because the officers were dispatched to Splash in response to a burglar alarm and their entry into the building was required as part of their duty to properly investigate the scene.  The City/Parish asserts that the officers' use of deadly force was reasonable and does not constitute an assault or battery because the officers discharged their weapons in response to the immediate and deadly threat that Plaintiff posed to their safety.  The City/Parish similarly argues that Plaintiff's negligent discharge of duties claim should be dismissed because Plaintiff has not identified any duty or breach by the officers outside of his excessive force allegations.

The City/Parish further asserts that Plaintiff's negligence claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed. 2d 383 (1994), because a finding that the officers were negligent would undermine the probable cause element of Plaintiff's indictment and subsequent conviction.  The City/Parish argues that under *Heck*, an individual who brings a § 1983 claim against the arresting officers and their supervisors may be barred from recovery if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  (R. Doc. 48-1 at 12-13) (citing *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000)).  Although Plaintiff failed to allege any facts to support his negligence claims, the City/Parish asserts that *Heck* also bars Plaintiff's state law claims if they would necessarily attack the validity of his underlying conviction.  Alternatively, the City/Parish asserts that if the Court dismisses Plaintiff's federal claims, the Court should not exercise supplemental jurisdiction over his state law claims.

In response, Plaintiff maintains that the Motion should be denied because there are genuine issues of material fact regarding what happened on the night in question. (R. Doc. 49). While the City/Parish asserts the police officers identified themselves twice and asked Plaintiff to show his hands before Plaintiff opened fire on them, Plaintiff asserts the officers never identified themselves and merely yelled "Freeze." (R. Doc. 49 at 1-2). Plaintiff argues that *Heck* does not apply to this case because a favorable § 1983 claim would not invalidate Plaintiff's plea of no contest to criminal mischief. Plaintiff further asserts that the police officers failed to act reasonably by not properly identifying themselves when they found him asleep on the sofa at Splash. Plaintiff contends that if the officers had properly identified themselves, the gun fight never would have occurred. Nonetheless, Plaintiff asserts the reasonableness of the officers' actions should be determined by the trier of fact, making summary judgment improper.

Finally, Plaintiff asserts that "the policy of the Baton Rouge City Police is to ***NOT*** shoot people who are lawfully in a residence/place of business and asleep." (R. Doc. 49 at 4)(Emphasis in original). While noting that establishing a policy of not shooting law abiding citizens probably does not require the assistance of an expert, Plaintiff stated in the Opposition that he had retained Dr. Schindler as an expert,[6] and that the expert report, which was due on May 4, 2016, "will have a more thorough review of any applicable rules and policies in place over-and-above the policy of not shooting innocent people." (R. Doc. 49 at 5).[7] Plaintiff further asserts that the undisputed fact

---

[6] Plaintiff did not provide Dr. Schindler's first name. According to the Satisfaction of Amended Scheduling Order, filed on May 4, 2016, the expert's name is Dr. Wade Schindler. (R. Doc. 50).

[7] In the Opposition, Plaintiff asks the Court to deny summary judgment or, alternatively, for additional time to respond to the Motion because his expert report "isn't complete and not yet due according to this Honorable Court's scheduling rules." (R. Doc. 49 at 1). The deadline for Plaintiff to file expert reports, however, was May 4, 2016, a mere two days after Plaintiff's May 2, 2016 deadline to file an opposition to the Motion. (*See* R. Docs. 46, 47). Further, the only expert report Plaintiff provided was a "Preliminary Report" by Dr. Schindler, which was filed into the record on May 4, 2016. (R. Doc. 50-2). Even taking Dr. Schindler's Preliminary Report into consideration, he states: "The Baton Rouge Police Department Policies & Procedures manual has not been provided to this expert" and that he had "not reviewed the BRPD's policies and procedures." (R. Doc. 50-2 at 18, 20). Under the circumstances, the Court does not find that additional time to respond to the Motion is warranted.

that the officers shot him is a sufficient genuine issue of material fact for a reasonable juror to determine whether he suffers from any emotional distress and whether the officers acted negligently under the circumstances.

## II.     APPLICABLE LAW

### A.  Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  However, when the non-movant bears the burden of proof at trial, the party seeking summary judgment must only show that an essential element of the non-movant's claim cannot be established. *Id..*, 477 U.S. at 322-23, 106 S.Ct. at 2552.  If the moving party carries its burden of proof under Rule 56, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c).  Speculation, unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012).  In resolving a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the non-movant and cannot weigh evidence or evaluate credibility. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398-99 (5th Cir. 2008).

### B. Municipal Liability Under 42 U.S.C. § 1983

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997) (quotation omitted). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quotation omitted). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 1830, 118 L.Ed2d 504 (1992) (citation omitted).

Municipalities and other local governments may be held liable for constitutional violations under § 1983 where official policy or custom caused those violations. *Bennett v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984) (citing *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)). Municipalities may not, however, be held liable for such violations under theories of *respondeat superior* or vicarious liability. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. Thus, municipal liability under § 1983 requires proof of three elements: (1) an official policy or custom; (2) an official policymaker with actual or constructive knowledge of the constitutional violation; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The Fifth Circuit has held, "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur, isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578 (citations omitted).

### III. DISCUSSION

**A. The City/Parish is Entitled to Summary Judgment on Plaintiff's Municipal Liability Claim under 42 U.S.C. § 1983**

Here, the generalized allegations in the Complaint make it difficult for the Court to determine the exact constitutional violations raised in support of Plaintiff's § 1983 claim and against whom those claims are being asserted. The only allegations in the Complaint regarding § 1983 liability are as follows:

> 11.
> During the course of the Baton Rouge City Police Department officers' investigation, they came upon Plaintiff asleep on a couch on the second floor of the building and after confronting him, discharged their weapons in his direction. As a result of Baton Rouge City Police Department officer's use of excessive force under color of law, Plaintiff sustained multiple gun shot wounds.

> 12.
> At all times pertinent hereto, Plaintiff enjoyed clearly established rights of liberty and due process pursuant to the 14th Amendment to the United States Constitution; clearly established rights to be free from unreasonable searches and seizures of his person pursuant to the 4th Amendment to the United States Constitution; freedom from deprivation of life and liberty without due process of law pursuant to the 5th Amendment to the United States Constitution; clearly established rights to be free from cruel or unusual punishments inflicted pursuant to the 8th and 14th Amendments to the United States Constitution; and clearly established rights to be provided with necessary medical attention.

> 13.
> The actions of the officers of the City of Baton Rouge Police Department as set forth herein abridged, impaired, and interfered with Plaintiff's clearly established Constitutional rights as afforded him under both the United States and Louisiana Constitutions.

> 14.
> At all times pertinent hereto, the officers named above were persons acting under color of law, or lawful authority for the Defendant, within the meaning and intent of 42 U.S.C. 1983.

> 15.
> The City of Baton Rouge Police Department officers acted in knowing, wanton, and reckless disregard for Plaintiff's clearly established rights. Plaintiff is thus entitled to and desires the award of punitive damages in his favor.

(R. Doc. 1 at 2-3).

After reviewing the pleadings and other submissions by the parties, the Court concludes that the underlying alleged constitutional violation giving rise to Plaintiff's § 1983 claim is the excessive use of force by the three police officers in discharging their weapons in Plaintiff's direction during the incident on December 4, 2008. The Complaint contains no allegations regarding the City/Parish's municipal liability under § 1983. Instead, Plaintiff appears to assert an excessive use of force claim against the three police officers. The officers, however, are not parties to this litigation. The only defendant named in the Complaint is "The City of Baton Rouge/The Parish of East Baton Rouge." (R. Doc. 1 at 1). Thus, to the extent that Plaintiff is attempting to assert a claim of municipal liability under § 1983 against the City/Parish based on the theory of *respondeat superior*, the claim must be dismissed. The Supreme Court has expressly held that, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

The Court further finds that Plaintiff has failed to allege any facts in the Complaint to show that the three elements required for municipal liability under § 1983 are met in this case. In fact, the Complaint makes no mention of the three elements set forth in *Monell* to establish municipal liability under § 1983. Plaintiff only addressed one of the elements, the "policy or custom" requirement, in his Opposition. Therein, Plaintiff asserts "It is submitted that the policy of the

11

Baton Rouge City Police is to *NOT* shoot people who are lawfully in a residence/place of business and asleep." (R. Doc. 49 at 4).

The Fifth Circuit has held that, "A § 1983 plaintiff must plead specific facts with sufficient particularity to meet all the elements of recovery. This heightened pleading requirement applies to allegations of municipal custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) (citation omitted). Further, "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997). The Court finds that Plaintiff's assertion regarding the City/Parish's broad policy "to not shoot people" fails to satisfy the particularity requirement required for a municipal liability claim under § 1983. [8]

Based on the foregoing, the Court finds the allegations in the Complaint and the Opposition are insufficient to satisfy the standards for stating a cause of action against a municipality under § 1983. As mentioned above, the Complaint contains no allegations regarding the City/Parish's municipal liability under § 1983. Instead of asserting facts to establish the three elements required for a municipal liability claim under § 1983, Plaintiff appears to assert an excessive use of force claim against the three police officers who are not parties to this litigation. As such, Plaintiff has failed to show that there is a genuine issue of material fact preventing summary judgment on his municipal liability claim under § 1983.

---

[8] In the Motion for Summary Judgment, the City/Parish asserts that Plaintiff has not alleged municipal liability under § 1983 based on the City/Parish's failure to train or supervise the three officers. (R. Doc. 48-1 at 7). Although it is not clear that Plaintiff submitted Dr. Schindler's Preliminary Report in opposition to the Motion, the report does state: "It is my preliminary opinion that the BRPD's policies, procedures, training and supervision may be below police industry standards in the areas of officer safety, use of force, de-escalation, and responsibility, creating dangerous conditions for both officers and citizens." (R. Doc. 50-2 at 21). However, even were this statement sufficient to address the first element of municipal liability under § 1983, *i.e.*, an official policy or custom, Plaintiff has made no allegations whatsoever regarding a policymaker who had "actual or constructive knowledge of the constitutional violation," nor has Plaintiff shown (or even alleged) how that policy violates federal law or directs deprivation of federal rights, as required by *Monell*. 436 U.S. at 694, 98 S.Ct. at 2037. Thus, even to the extent Plaintiff has adequately alleged that the City/Parish has a policy of inadequate training and supervision of its police officers, Plaintiff's claim for municipal liability under § 1983 still fails.

### B. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Tort Claims Pursuant to 28 U.S.C. § 1367

Since the Court finds that the City/Parish is entitled to summary judgment with respect to Plaintiff's claim for municipal liability under 42 U.S.C. § 1983, the only remaining claims before the Court are Plaintiff's state law tort claims. To the extent that Plaintiff's allegations in the Complaint may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over his state law tort claims, a district court is authorized to decline the exercise of supplemental jurisdiction if the state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it has original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367(c). In the instant case, since the Court is granting the Motion for Summary Judgment and dismissing Plaintiff's municipal liability claim under 42 U.S.C. § 1983, the Court declines to exercise supplemental jurisdiction in connection with Plaintiff's state law tort claims.

### IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the FRCP Rule 56 Motion for Summary Judgment Filed by Defendants (R. Doc. 48) is **GRANTED**, dismissing the Plaintiff's claims against the City of Baton Rouge/Parish of East Baton Rouge, with prejudice.

Signed in Baton Rouge, Louisiana, on July 15, 2016.

                                               **ERIN WILDER-DOOMES**
                                               **UNITED STATES MAGISTRATE JUDGE**